Filed 4/14/25 In re I.A. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re I.A., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B341485 (Super. Ct. No. 22JV00033) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. R.G. et al., Defendants and Appellants. | |

R.G. (father) and H.A. (mother) appeal the juvenile court's order terminating parental rights as to I.A. (Welf. & Inst. Code

§ 366.26.)[1]  Both parents assert ineffective assistance of counsel claims.  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2022, Child Welfare Services (CWS) filed a juvenile dependency petition regarding 12-month-old I.A.  CWS filed an amended petition on March 4, 2022.  That petition alleged I.A. was medically fragile and diagnosed with pseudohypoaldosteronism type 1B, gastronomy tube dependence, and severe eczema.  She had been hospitalized twenty times for dire electrolyte abnormalities.  Doctors expressed concern that I.A. stabilized in the hospital only to return shortly after going home.  The amended petition also described father's criminal history, including a December 2021 DUI arrest.

At a February 2022 hearing, the court ordered detention and four hours per week of supervised visitation.  At a March 2022 hearing, parents rested on jurisdiction and submitted on disposition.  The court found the allegations in the amended petition true by a preponderance of the evidence and set a June 2022 interim review hearing.

According to a report for that June 2022 hearing, a doctor indicated I.A.'s condition had "improved tremendously since being removed from the parent's [sic] care."  At the hearing, the court approved the case plan.

The six-month status report indicated mother had been visiting consistently to the best of her ability, although she had canceled visits due to illness and transportation.  Father's visits had been inconsistent due to his work schedule.  The court continued reunification services.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

According to the twelve-month status report, parents were inconsistent with family time and often canceled when scheduled for eight hours per week.  After CWS reduced to four hours per week, attendance improved.  The court again continued reunification services.

On August 16, 2023, the court held a contested 18-month status review hearing.  CWS social worker Aimee Proietty testified that, due to her medical condition, I.A. was fed through a gastronomy tube five times daily and typically received a continuous feed all night.  Preparation of the feeding formula was an intensive process requiring decantation.

Proietty explained I.A.'s needs were "huge" and "very detailed."  In addition to her genetic electrolyte condition and severe eczema, I.A. had severe food allergies and had been diagnosed with asthma.  She needed special water and application of cream to her entire skin multiple times a day.  She required multiple medications four to five times a day through her gastronomy tube.  I.A. also "could not have any fragrance in her clothing . . . ."

Parents had six hours per week of unsupervised visits.  After one visit, I.A. had a food allergy reaction around her mouth that turned into an infection.  I.A. had also been put in clothing with a strong fragrance that caused skin irritation.  During another visit, a feeding was missed.

Of 21 visits during the last review period, parents had attended 11.  CWS canceled four.  Parents canceled six—four due to car issues, two due to a sick sibling.  According to the status review report, Proietty asked mother about additional days that visits could occur.  Mother indicated she could do only the current

3

visitation day, and CWS was not able to increase the visits from six hours per week.

Proietty agreed CWS was satisfied with parents' housing situation and their progress in "being able to provide clothing and necessities for the children." CWS was also satisfied with father's progress as to alcohol use.

Father testified he missed visits due to car trouble but had purchased a more reliable vehicle. He had not attended medical appointments for fear of being fired. Now, at work, they know he has an ill child and give permission.

Mother indicated nobody had previously told her about using unscented laundry soap for I.A.'s clothing. Mother denied missing a feeding. Mother also denied having a conversation with Proietty about increasing her visits. Mother stated: "[I]f I can see my daughter one, two, or three days a week, I want to do that."

The court noted I.A. was a medically fragile child who could die. The court did not doubt parents loved I.A. However, "[t]o be confident in a return to the parents, the visitation should have increased to the point that [they] would have her overnight, for a weekend, to show she can be cared for." The court believed returning I.A. home would put her in a dangerous situation. It terminated reunification services. The court provided a writ advisement, which parents verbally indicated they understood.

On December 19, 2023, the court held a post-permanency status review and section 366.26 hearing. Parents' counsel submitted on CWS's recommendation of legal guardianship. CWS later found an adoptive placement for I.A., and a new section 366.26 hearing was set to change I.A.'s permanent plan to adoption. At the July 9, 2024 section 366.26 hearing, new

4

counsel substituted for both parents, who were present. The court continued the hearing to August 6, and the parties waived notice, although notice was mailed to parents.

The July 9, 2024 section 366.26 report indicated parents visited with I.A. monthly from January through June, except for March and May. Parents were attentive and loving toward her. I.A. knew her caregivers as "grandma" and "grandpa" and had a loving and affectionate relationship with them. I.A. had two placements before her current caregivers, who had been providing I.A. respite care for over two years. I.A. had a room in their home prior to placement. I.A.'s assigned CASA volunteer submitted a report for the hearing stating I.A. "continues to thrive in her newest placement" and that "she seems to do really well with" the "routine and consistency."

Neither parent was present for the August 6 selection and implementation hearing. Father's counsel stated: "I haven't had any contact with [father], and given the nature of the medical issues with the child, submitted." Mother's counsel echoed "what [father's counsel] has said regarding mom" and submitted as well. The court found I.A. likely to be adopted and terminated parental rights.

## DISCUSSION

Parents assert ineffective assistance of counsel on multiple grounds, including failure to: (1) file a writ petition challenging termination of reunification services; (2) advocate for increased visitation or against decreased visitation; (3) file a section 388 petition; (4) establish client contact; (5) request a continuance of the section 366.26 hearing to secure parents' presence; (6) challenge I.A.'s adoptability; and (7) assert the parental-benefit

5

exception. We conclude parents have not shown ineffective assistance of counsel.

A parent in dependency proceedings is entitled to competent counsel. (§ 317, subd. (b); § 317.5, subd. (a); *In re A.R.* (2021) 11 Cal.5th 234, 245 ["[C]onstitutional due process sometimes demands the appointment of counsel for a parent facing the termination of rights"].) "Ineffective assistance of counsel ordinarily is raised by a petition for writ of habeas corpus." (*In re N.M.* (2008) 161 Cal.App.4th 253, 270.) We review such claims on direct appeal only when ""'there simply could be no satisfactory explanation' for trial counsel's action or inaction."'" (*In re Darlice C.* (2003) 105 Cal.App.4th 459, 463.)

To mount a successful claim, the parent "must show both that counsel failed to act in a manner to be expected of a reasonably competent attorney practicing in the field of juvenile dependency law, and that it is '"reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."'" (*In re M.F.* (2022) 74 Cal.App.5th 86, 108-109.) "It is not necessary to examine whether counsel's performance was deficient before examining the issue of prejudice." (*In re N.M.*, *supra*, 161 Cal.App.4th at p. 270.)

Parents have failed to show prejudice from any claimed instance of deficient performance. Parents' counsel advocated for their clients during the contested hearing at which the court terminated reunification services. Given the issues adhering to I.A.'s health protocols during even short visits, as well as the inability to expand visitation to demonstrate adequate long-term caretaking, a writ had negligible chance of success. I.A.'s post-detention hospitalizations highlighted the continued importance

6

of optimal medical care—and, conversely, the substantial risk of detriment associated with returning her to parents. (§ 366.22.)

Parents likewise cannot demonstrate prejudice regarding the section 366.26 hearing. CWS assessed I.A. as specifically adoptable. In such cases, "'the analysis shifts from evaluating the characteristics of the child to whether there is any legal impediment to the prospective adoptive parent's adoption and whether he or she is able to meet the needs of the child.'" (*In re J.W.* (2018) 26 Cal.App.5th 263, 268.) Here, the prospective adoptive parents "expressed that they have been a part of [I.A.'s] life for 2.5 years and have the time and resources to provide a 'good life' for [I.A.]." CWS described them as "fully committed." No tangible impediment to adoption existed. An objection to adoptability would have been fruitless.

Invocation of the parental-benefit exception would have met the same fate. A parent invoking the exception has the burden of proof and must establish three elements by a preponderance of the evidence: (1) "regular visitation and contact" between the parent and child; (2) "a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and (3) "terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*In re Caden C.* (2021) 11 Cal.5th 614, 636 (*Caden C.*).) The inquiry's focus is the child's best interests. (*Id.* at p. 632.)

Even assuming the first two elements would have been established, there existed no reasonable probability of success on the third. As a medically fragile three-year-old child who had already moved through multiple placements, stability and proper

7

care were paramount for I.A. The CASA volunteer's report confirmed this. While mother and father were loving and attentive toward I.A. at visits, I.A. had spent over two-thirds of her life outside of their full-time care. The court was effectively bound to conclude that the benefit of a stable, adoptive home outweighed any detriment associated with severing the parental bonds. (*Caden C.*, *supra*, 11 Cal.5th at pp. 633-634.)

The same analysis holds for counsels' decision to proceed in their clients' absence instead of seeking a continuance, as well as the apparent lack of contact between parents and their new counsel. Neither parents' testimony nor their presence at the hearing had a reasonable probability of affecting its outcome.

Nor have parents established that any failure to advocate regarding visitation prejudiced them. In conjunction with terminating reunification services, the court reduced visitation to two hours supervised monthly, down from six hours unsupervised weekly. To justify reversal of the order terminating parental rights, parents must show that a more favorable result at the section 366.26 hearing was reasonably probable had counsel competently advocated for enhanced visitation. Given the primacy of I.A.'s enormous medical needs, both a modest increase in visitation time and liberalization of supervision were highly unlikely to change the section 366.26 hearing outcome. Indeed, parents had shown an inability to accommodate even eight visitation hours weekly, and a CWS inquiry into additional visitation days yielded no change.

The lack of a section 388 petition does not provide an avenue for relief. Unlike in *In re Eileen A.* (2000) 84 Cal.App.4th 1248, parents did not have a "clear winner." (*Id.*, at p. 1262, disapproved in part by *In re Zeth S.* (2003) 31 Cal.4th 396, 413-

8

414.)  We fail to perceive any substantial change in circumstances.  As explained in *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 221, "[a]n attorney in a dependency case has no obligation to file a futile . . . petition" under section 388.

Finally, in his reply brief, father argues cumulative error. Whether we consider all claimed instances of ineffective assistance separately or collectively, prejudice does not exist.

DISPOSITION

The order terminating parental rights is affirmed.
NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara
_____

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant R.G. (father).

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant H.A. (mother).

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Senior Deputy County Counsel, for Plaintiff and Respondent Santa Barbara County Department of Social Services.